FILED
7/1/22 2:05 pm
CLERK
U.S. BANKRUPTCY
COURT - WDPA

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: : | Case No. 18-22878-GLT |
| : | Chapter 13 |
| **RONALD F. ALLER and** : | |
| **JOAN L. ALLER**, : | |
| : | |
| *Debtors*. : | Related to Dkt. Nos. 80, 91, and 95 |
| : | |

| | |
|---|---|
| Lauren M. Lamb, Esq. | Owen W. Katz, Esq. |
| Steidl & Steinberg | Office of the Chapter 13 Trustee |
| Pittsburgh, PA | Pittsburgh, PA |
| *Attorney for the Debtors* | *Attorney for Ronda Winnecour* |

## MEMORANDUM OPINION

The concept of "no harm, no foul" often compels the Court to allow corrections to non-prejudicial errors, but the inattention that causes these mistakes, particularly when they become routine, cannot be so easily excused. On May 18, 2022, the Court approved the sale of real property owned by Ronald F. and Joan L. Aller ("Debtors") and located in Hookstown, Pennsylvania for $380,000 (the "Sale Order").[1] At the expedited hearing on the sale motion,[2] so scheduled to accommodate the proposed buyers' request to close no later than June 24, 2022,[3] the Debtors' counsel represented that "to the best of [her] knowledge" all contingencies were satisfied.[4] Apparently, counsel's knowledge was lacking as the Debtors now seek to alter the *Sale Order* to add a $5,700 sellers' assist and increase the home warranty cost by $241 based on a negotiated resolution of a home inspection contingency that remained outstanding ("Motion to

---

[1]    *Order Confirming Chapter 13 Sale of Property Free and Divested on Liens*, Dkt. No. 91.

[2]    *Motion to Sell Real Estate Free and Divested of Liens*, Dkt. No. 80.

[3]    *Certificate of Necessity of Request for Expedited Hearing*, Dkt. No. 81 at 2.

[4]    *Audio Recording of May 18, 2022 Hearing* at 11:09:02-11:09:10 a.m.

Amend").[5] The Court once again scheduled an expedited hearing and heard the *Motion to Amend* on June 29, 2022. For the reasons set forth below, the Court will grant the *Motion to Amend* subject to certain conditions that will be resolved through show cause proceedings.

I.   **JURISDICTION**

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(N).

II.  **DISCUSSION**

From the outset, the Court notes that the six-paragraph *Motion to Amend* merely requests the entry of an amended sale order without suggesting a standard the Court should apply to such relief. Frankly, it is clear that Debtors simply want the Court to rubber stamp their amended order, no questions asked. The *Motion to Amend* neither contemplates re-noticing the sale nor a hearing, but the Court presumes — and the *Motion to Amend* does not bother to spell out — that they believe that Bankruptcy Rules[6] 2002(a)(2) and 6004 are not implicated because the sellers' assist will be paid from the Debtors' exempt net proceeds.

To be clear, the *Motion to Amend* describes a materially different transaction than the one the Court approved after notice and a hearing. Through contrivance, the sale price remains unchanged, but the sellers' assist allows the buyer to pay less. As a practical matter, structuring a transaction in this manner amplifies administrative costs—like transfer taxes and brokers'

---

[5]  *Motion to Amend Order of Court Confirming Chapter 13 Sale of Property Free and Divested Liens*, Dkt. No. 95 at ¶¶ 4-6.

[6]  Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

2

commissions—by artificially inflating the sale price without a clear benefit to the estate or creditors. Of critical concern, however, is that the buyer's bid, which was subject to higher and better offers, was overstated when the property was advertised and exposed for sale. Consequently, the notice of sale misrepresented the necessary overbid to the detriment of the sale process.[7] Simply put, a post-approval sellers' assist is not a technical amendment but a different sale.[8]

        That said, any prejudice stemming from the lack of appropriate notice will be borne solely by the Debtors. The sale of the property, which the Debtors hold as tenants by the entirety, will fully pay both mortgages, all administrative expenses and costs of sale, and their joint debts before leaving them with exempt proceeds exceeding $100,000.[9] Under these circumstances, neither the estate nor creditors would have benefitted from a higher or better sale price. Nor are they damaged by the increased transactional costs. Accordingly, the Court will not require the sale to be re-noticed in accordance with Bankruptcy Rules 2002(a)(2) and 6004 to account for the sellers' assist.

        But even if the relief requested is not tantamount to a new sale, the *Sale Order* is a final order. As a result, the *Motion to Amend* is essentially seeking relief under Fed. R. Civ. P. 60(b) ("Rule 60(b)").[10] Upsetting the finality of a decision is "an extraordinary remedy," it "should

---

[7]    The Court requires a seller's assist to be disclosed in the sale notice and prospective bidders must be apprised of the "net" sale price as the baseline bid from which competing overbids may be made.

[8]    Perhaps the big picture lesson here is that contingencies should generally be resolved prior to the sale hearing. In fact, counsel should confirm the status of any contingencies and be prepared for a frank discussion. The Court is not in the habit of approving speculative transactions, and it is a waste of resources when a sale cannot close as approved.

[9]    *Schedule C: The Property You Claim as Exempt*, Dkt. No. 1 at 19.

[10]    Fed. R. Civ. P. 60 is made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024. Rule 60(a) is not germane because it applies only to clerical errors. See Fed. R. Civ. P. 60(a).

3

only be granted sparingly."[11]  Thus, to prevail under Rule 60(b), the movant must establish at least one of the six enumerated grounds for relief:

> (1) mistake, inadvertence, surprise, or excusable neglect;
>
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
>
> (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
>
> (4) the judgment is void;
>
> (5) the judgment has been satisfied, released, or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
>
> (6) any other reason that justifies relief.[12]

Clearly, the *Sale Order* is not void or satisfied, and no one contends it was obtained by fraud or misconduct.  And since the Debtors were aware of the status of the home inspection contingency and their negotiations with the buyers, there is obviously no "newly discovered evidence" either.

As this Court previously explained in *In re Harms*, "[n]one of the terms used in [Rule] 60(b)(1) are defined, but courts generally look to the Supreme Court of the United States' decision in *Pioneer Investment Services v. Brunswick Assoc.*[13] for the meaning of 'excusable neglect.'"[14]  There, the Supreme Court held that "neglect" "encompasses both simple, faultless

---

[11]  See Butko v. Ciccozzi (In re Butko), 624 B.R. 338, 366 (Bankr. W.D. Pa. 2021); U.S. Tr. v.Harms (In re Harms), 612 B.R. 288, 295 (Bankr. W.D. Pa. 2020); Deeters v. Wells Fargo Bank, N.A. (In re Deeters), No. 15-70570-JAD, 2017 WL 4990449, at *2 (Bankr. W.D. Pa. Oct. 27, 2017); In re Matters Involving Prof'l Conduct of Mazzei, No. MISC. 14-00205-GLT, 2014 WL 4385746, at *3 (Bankr. W.D. Pa. Sept. 4, 2014).

[12]  Fed. R. Civ. P. 60(b), made applicable to bankruptcy cases by Fed. R. Bankr. P. 9024.

[13]  Pioneer Investment Services v. Brunswick Assoc., 507 U.S. 380, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (interpreting "excusable neglect" for purposes of Fed. R. Bankr. P. 9006(b)).

[14]  In re Harms, 612 B.R. at 295 (citing Doe v. 9197-5904 Quebec, Inc., 727 F. App'x 737, 739 (3d Cir. 2018), and George Harms Const. Co. v. Chao, 371 F.3d 156, 163 (3d Cir. 2004)).

omissions to act and, more commonly, omissions caused by carelessness."[15] At its core, the Supreme Court concluded that whether neglect is "excusable" is "an equitable [determination], taking account of all relevant circumstances surrounding the party's omission."[16] To guide the inquiry, courts employ the so-called *Pioneer* factors, including: (1) "the danger of prejudice;" (2) "the length of the delay and its potential impact on judicial proceedings;" (3) "the reason for the delay, including whether it was within the reasonable control of the movant;" and (4) "whether the movant acted in good faith."[17]

        The *Motion to Amend* does not acknowledge, with the benefit of hindsight, that an inspection contingency remained outstanding or attempt to justify counsel's ignorance of the ongoing sale negotiations. Nor does it confess that negotiations had begun prior to the sale hearing and was an open issue at that time.[18] At the hearing, counsel conceded that these issues could have and should have been raised prior to entry of the *Sale Order*, but insisted her office was left in the dark by the broker. Thus, the driving consideration behind the *Motion to Amend* is the perceived lack of prejudice to the estate or creditors. And to be sure, it is ultimately the prevailing one. Yet while there is cause to amend the *Sale Order* under Rule 60(b)(1), there is potential for prejudice.

        As explained by the Debtors' counsel, attorneys at her firm have spent approximately 6.5 hours seeking the modification of the *Sale Order*. Based on the disclosures filed pursuant to Bankruptcy Rule 2016(b), the firm's billing rates for attorneys range from $250 to $350 per hour.[19] As a result, the estate may now be saddled with an unexpected administrative

---

[15]     Pioneer, 507 U.S. at 388, 113 S.Ct. 1489.

[16]     Id. at 395, 113 S.Ct. 1489.

[17]     Id. See Nara v. Frank, 488 F.3d 187, 194 (3d Cir. 2007).

[18]     The addendum to the sale agreement was signed by the Debtors 3-days prior to the sale hearing. See *Exhibit A*, Dkt. No. 95-1.

[19]     *Disclosure of Compensation of Attorney for Debtor(s)*, Dkt. No. 1 at 58.

expense between $1,625 and $2,275. Because such allowed expenses are entitled to priority treatment under the Bankruptcy Code,[20] payment from current plan funding could conceivably reduce the dividend to general unsecured creditors.[21] Thus, granting the *Motion to Amend* will yield a small, but quantifiable, financial prejudice to the general unsecured creditors.

To avoid unwarranted prejudice, the Court must shift the resulting burden to the responsible party. Right now, the Debtors' counsel has pointed the finger at their broker, suggesting that she allegedly failed to warn counsel of the outstanding contingency despite counsel's reasonable efforts to stay informed. Further proceedings will be required to determine if that is true or whether blame is appropriately laid elsewhere. In the interim, the Court will require that $2,617 of the sellers' broker's commission be withheld at the closing, pending the resolution of an order to show cause.

### III.    CONCLUSION

In light of the foregoing, the Court will grant the *Motion to Amend* subject to the above-described holdback and order the sellers' broker to show cause why the Court should not shift the financial prejudice resulting from the *Motion to Amend* to her based on her failure to timely disclose the unsatisfied contingency. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: July 1, 2022

GREGORY L. TADDONIO
UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Debtors

---

[20]    See 11 U.S.C. § 503(b)(2).

[21]    See *Chapter 13 Plan Dated July 18, 2018*, Dkt. No. 5.