FILED
3/31/23 8:50 am
CLERK
U.S. BANKRUPTCY
COURT - WDPA

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| In re: | Case No. 18-22878-GLT |
| | Chapter 13 |
| **RONALD F. ALLER and** | |
| **JOAN L. ALLER**, | |
| | Related to Dkt. Nos. 108, 112 |
| *Debtors.* | |

Lauren M. Lamb, Esq.  
Steidl & Steinberg  
Pittsburgh, PA  
*Attorney for the Debtors*

Owen W. Katz, Esq.  
Office of the Chapter 13 Trustee  
Pittsburgh, PA  
*Attorney for Ronda Winnecour*

## MEMORANDUM OPINION

Once approved by the Court, real estate brokers owe their primary allegiance to the bankruptcy estate, not the property owners. As estate professionals, they must satisfy their obligations—including the duty to proactively communicate material developments—or suffer the consequences. Days before an expedited sale hearing, Jan Livingston of Berkshire Hathaway, the authorized realtor, began negotiating a sellers' assist and warranty increase to resolve a home inspection contingency.[1] Problem is, she neither alerted the Court or counsel to the outstanding contingency, nor to her efforts to address it by materially altering the sale terms.[2] The Court approved the sale of Ronald F. and Joan L. Aller's residence on the original terms, but they inevitably returned weeks later for an amended order.[3] While the Court granted the relief requested, it withheld $2,617 of Ms. Livingston's commission and ordered her to appear and show cause why she failed to provide updates or otherwise communicate material developments to the

---

[1] In re Aller, No. 18-22878-GLT, 2022 WL 2398889, at *3 (Bankr. W.D. Pa. July 1, 2022).

[2] Id.

[3] Id. at *1.

Debtor's counsel.[4]  Despite actual notice,[5] Ms. Livingston neither responded in writing nor appeared as ordered.  Following the hearing, the Debtors' counsel filed a status report indicating that her firm incurred $1,677.07 in fees and costs as a result of the additional proceedings.[6]  Thus, for the reasons below, the Court finds Ms. Livingston in contempt and will impose sanctions against her in the amount of $2,617.

**I.      JURISDICTION**

This Court has authority to exercise jurisdiction over the subject matter and the parties under 28 U.S.C. §§ 157(a), 1334, and the Order of Reference entered by the United States District Court for the Western District of Pennsylvania on October 16, 1984.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (N).

**II.     DISCUSSION**

From the outset, the Court has no conceptual issue with Ms. Livingston's creative efforts to salvage a faltering sale.  That is why the Court entered the amended sale order.  But brokers (like Ms. Livingston) must recognize that bankruptcy sales are not business as usual.  And an estate professional ignoring a Court-ordered appearance is wholly unacceptable.

Taking a step back, the filing of a bankruptcy petition is legally significant for many reasons.  Among other things, it creates an estate comprised of all legal and equitable interests of the debtor in property as of the commencement of the case.[7]  "Property of the estate is central to the bankruptcy process" because it "becomes the 'pot' from which all claims against the debtor

---

| | |
|---|---|
| 4 | Id. at *3; *Order to Show Cause*, Dkt. No. 108. |
| 5 | *Status Report Regarding Order to Show Cause*, Dkt. No. 112 at ¶¶ 2-3. |
| 6 | Id. at ¶ 4. |
| 7 | 11 U.S.C. § 541(a). |

will be paid."[8]  While estate property, such as a debtor's residence, can still be sold, sales during the bankruptcy are subject to court oversight.[9]  Unsurprisingly, court supervision upsets the usual dynamics of real estate transactions in several ways.

First, a broker's engagement to sell estate property must be pre-approved by the Court.[10]  Without court approval, the broker is merely a volunteer with no entitlement to compensation.[11]  This is true even if the debtor signed a listing agreement pre-petition because the intervening bankruptcy displaces the debtor's control with that of a trustee or the legally distinct debtor-in-possession.[12]  A broker, like other professionals, may be employed by the bankruptcy estate so long as they do not hold an adverse interest and are "disinterested persons."[13]  Once retained, a broker owes the bankruptcy estate a duty of undivided loyalty and impartial service.[14]  Importantly, the estate—not the property owner—is the client.  As such, a broker must affirmatively communicate substantive developments in the sale process to estate professionals and, if necessary, the Court.

---

[8] U.S. v. Robinson (In re Robinson), 764 F.3d 554, 559 (6th Cir. 2014) (quoting Chao v. Hosp. Staffing Serv. Inc., 270 F.3d 374, 382 (6th Cir.2001)) (internal quotation marks omitted).

[9] 11 U.S.C. § 363(b)(1).

[10] See 11 U.S.C. § 327(a).  The United States Court of Appeals has held that "with the court's approval" in section 327(a) contemplates "prior approval." Matter of Arkansas Co. Inc., 798 F.2d 645, 649 (3d Cir. 1986). Under "extraordinary circumstances," the Court may, but need not, approve the employment of a professional for services already furnished to the estate.  See F/S AirLease II, Inc. v. Simon, 844 F.2d 99, 105 (3d Cir. 1988); In re Young, 646 B.R. 779, 784 (Bankr. W.D. Pa. 2022).

[11] See 11 U.S.C. § 330(a)(1); In re N. John Cunzolo Assocs., Inc., 423 B.R. 735, 736 (Bankr. W.D. Pa. 2010).

[12] See W/B Assocs. v. Mericle Commercial Real Estate Grp. (In re W/B Assocs.), 227 B.R. 635, 637 (Bankr. W.D. Pa. 1998); Matter of Timberline Prop. Dev., Inc., 115 B.R. 787, 790 (Bankr. D.N.J. 1990).

[13] 11 U.S.C. § 327(a).  Generally, a "disinterested person" means a person who is not a creditor, an equity security holder, an "insider" as defined by the Code, a former officer or employee of the debtor, or someone with materially adverse interest to the estate or a class of creditors. 11 U.S.C. § 101(14).

[14] See In re Allegheny Int'l, Inc., 100 B.R. 244, 246 (Bankr. W.D. Pa. 1989).

Next, the Court may alter the terms of the listing agreement, including the broker's fee, as a condition to approval.[15] The Court typically defers to a broker's knowledge and expertise in selecting an appropriate listing price for estate property, but it will intervene if that price appears to be stalling the sale efforts. Additionally, the Court's duty to control administrative expenses requires the reasonableness of a professional's compensation to be evaluated both at retention and upon payment to assure the estate's benefit.[16] Realistically, only egregious circumstances would warrant the rare denial of a standard 6% commission for residential property.[17]

Finally, a sale of estate property must be approved by the Court to ensure the asset's value is preserved for the benefit of creditors.[18] Under the Code, the Court must find: (1) there is a "[s]ound business reason" for the sale; (2) the debtor has provided "[a]ccurate and reasonable notice" of the transaction; (3) the proposed sale price is "fair and reasonable;" and (4) "[g]ood faith exists."[19] The statutory mandate of "notice and a hearing"[20] generally means that the terms and conditions of the sale must be served and published in advance of court approval.[21] Typically, a sale requires at least 21-days' notice unless the court finds cause to shorten the period.[22] This affords an opportunity for creditors to object to the proposed sale and for the estate to potentially

---

[15] See 11 U.S.C. § 328(a).

[16] See Ferrara & Hantman v. Alvarez (In re Engel), 124 F.3d 567, 571 (3d Cir. 1997); In re Garden Ridge Corp., 326 B.R. 278, 281 (Bankr. D. Del. 2005).

[17] See, e.g., In re Schubert, 143 B.R. 337, 346 (S.D.N.Y. 1992) (exclusive broker's minimal role in securing purchaser for townhouse warranted a reduction of the 6% brokerage commission).

[18] 11 U.S.C. § 363(b)(1); see In re Sillerman, 605 B.R. 631, 648 (Bankr. S.D.N.Y. 2019) ("To ensure assets are preserved for the benefit of creditors, the Debtor cannot dispense assets outside the ordinary course without court approval"). An unauthorized sale is invalid and the transaction can be unwound. See 11 U.S.C. § 549.

[19] In re Primel, 629 B.R. 790, 798 (Bankr. W.D. Pa. 2021) (quoting In re Titusville Country Club, 128 B.R. 396, 399 (Bankr. W.D. Pa. 1991)) (internal quotation marks omitted).

[20] 11 U.S.C. § 363(b)(1); see also 11 U.S.C. § 102(1)

[21] See Fed. R. Bankr. P. 2002(c)(1), 6004; see also W.PA.LBR 6004-1 ("Sale of Estate Property Outside the Ordinary Course of Business").

[22] Fed. R. Bankr. P. 2002(a)(2).

4

solicit higher and better offers before the hearing. Indeed, despite the signing of a purchase and sale agreement, a property is not "off-the-market" and every sale hearing is potentially a public auction.

Here, Ms. Livingston's conduct may have saved the proposed transaction, but it undermined the process imposed by the Bankruptcy Code and Rules.[23] As the Court explained in its previous *Memorandum Opinion*, a sale with the sellers' assist is a materially different transaction than was noticed and approved:

> Through contrivance, the sale price remains unchanged, but the sellers' assist allows the buyer to pay less. As a practical matter, structuring a transaction in this manner amplifies administrative costs—like transfer taxes and brokers' commissions—by artificially inflating the sale price without a clear benefit to the estate or creditors. Of critical concern, however, is that the buyer's bid, which was subject to higher and better offers, was overstated when the property was advertised and exposed for sale. Consequently, the notice of sale misrepresented the necessary overbid to the detriment of the sale process.[24]

Even though the Debtor's counsel was able to smooth over these wrinkles,[25] the original sale hearing was an avoidable waste of time and money. The additional proceedings also substantially delayed the expedited closing date the buyers' requested, which could have jeopardized the sale.[26]

Under the circumstances, the Court finds that Ms. Livingston should bear the cost to the estate occasioned by her failure to keep counsel abreast of the contingencies' status. Therefore, as a sanction, the Court will direct the chapter 13 trustee to pay $1,677.07 of the

---

[23] Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific sections shall be to the Bankruptcy Reform Act of 1978, as thereafter amended, 11 U.S.C. § 101, *et seq.* All references to "Bankruptcy Rule" shall be to the Federal Rules of Bankruptcy Procedure.

[24] In re Aller, 2022 WL 2398889, at *1.

[25] The Court did not require the sale to be re-noticed under the circumstances, concluding that "any prejudice stemming from the lack of appropriate notice will be borne solely by the Debtors" because the proposed sale would yield over $100,000 in exempt sale proceeds. Id. at *2.

[26] See In re Aller, 2022 WL 2398889, at *1.

withheld $2,617 commission to Debtor's counsel on account of her fees. This leaves a balance of $939.93 in escrow. Had Ms. Livingston appeared as ordered, the Court would have been inclined to release the rest of her commission after rebuking her actions. Given her contempt, however, the Court will deem this amount forfeited.[27]

In closing, the Court observes that communication is a two-way street and counsel should not passively await updates from a broker. "To the best of my knowledge" cannot be a throwaway phrase to mask the lack of diligent inquiry into the facts. After all, reasonable reliance "assumes a reasonable attempt at eliciting . . . facts [that] are likely to be relevant to a particular court filing."[28] Specifically, counsel should know the status of all sale contingencies because the Court will undoubtedly ask about them at the sale hearing. In fact, it is the Court's expectation that the sale price and contingencies will be locked down prior to the sale hearing in typical residential property transactions.

### III.  CONCLUSION

In light of the foregoing, the Court imposes sanctions upon Ms. Livingston in the amount of $2,617. This opinion constitutes the Court's findings of fact and conclusions of law in accordance with Fed. R. Bankr. P. 7052. The Court will issue a separate order consistent with this opinion.

ENTERED at Pittsburgh, Pennsylvania.

Dated: March 31, 2023

GREGORY L. TADDONIO
CHIEF UNITED STATES BANKRUPTCY JUDGE

Case administrator to mail to:
Jan Livingston

---

[27] It is worth noting that the failure to appear before the Court as ordered is a poor decision that can result in the entry of a bench warrant and the United States Marshal compelling the appearance through apprehension.

[28] In re Taylor, 655 F.3d 274, 284 (3d Cir. 2011).